JAMES J. NOLAN, Appellant, v. JOSEPH FACH, Respondent.

Second Department, May 11, 1917.

Negligence — injury by explosion of soda water bottle — evidence rais-ing question for jury.

Action to recover for personal injuries caused by the explosion of a soda water bottle purchased from the defendant. It appeared that the defendant bought empty bottles and charged them in its factory with soda water and that such bottles would not stand more than fifty pounds pressure, and that as a matter of fact there were from ten to twelve explosions a week in the defendant's factory.

On all the evidence, *held*, that it was error for the court to dismiss the complaint at the close of plaintiff's case, as the question of the defendant's negligence should have been submitted to the jury.

APPEAL by the plaintiff, James J. Nolan, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Richmond on the 29th day of May, 1916, upon a dismissal of the complaint by direction of the court at the close of plaintiff's case.

*Richard J. Donovan* [*Herbert D. Cohen* with him on the brief], for the appellant.

*John G. Clark*, for the respondent.

THOMAS, J.:

The defendant bottled and sold soda water to the plaintiff, who kept it in an ice box, but not in direct contact with the ice. On May 25, 1914, the plaintiff carried a bottle from the ice chest into a room with a temperature between eighty and ninety degrees, where at once the bottle exploded and one of his eyes was thereby destroyed. The bottles had been purchased from one McGinn and were empty champagne bottles. Although the defendant was accustomed to refill bottles, it does not appear how long that in question had been so employed. The plaintiff had received it from defendant some three days before the accident. The plaintiff was constrained to call the defendant as a witness, inasmuch as the court would not receive the examination of the defendant before trial. The defendant explained in what manner he filled and charged the

Second Department, May, 1917.  [Vol. 178.

material in the bottle. It appears that he could raise the charge to three hundred pounds, but that the regular charge was fifty pounds. The defendant testified: "But you regulate it to make it anything you want? A. From one pound to 300, that is the gauge. Q. And it can't go beyond — A. (Interrupting). The bottle wouldn't stand that; the bottle wouldn't stand more than fifty pounds pressure. Q. The gauge fixes it? A. The gauge is fixed so it can't go above fifty." The defendant also gave this evidence: "Q. While you were charging these bottles, have you seen these bottles explode? A. I have. Q. How frequently have you seen that? A. A few times a week. Q. Would you say a dozen times a week? A. May be ten or twelve times. Q. And when you speak of these bottles exploding, were they under a pressure of fifty pounds? A. They were. Q. And is that all the pressure they were under? A. Not all. Q. Were these bottles that you speak of as exploding of the character of Plaintiff's Exhibit 1? [The bottle in question.] A. They were." So, then, the evidence is that the bottles would not stand more than fifty pounds pressure, and that there were ten or twelve explosions each week by charging them. From that evidence the jury could infer that the bottles were liable to explode beyond fifty pounds pressure, and that some of them did explode at that pressure. The defendant's manner of testing the bottles was to hold them up to the light in the course of washing them. Although the plaintiff had not suffered the experience of former explosions, the defendant seems to have exposed him to a considerable risk. Professor Wilhoft, who theoretically and practically was shown to be skilled in such matters, received the remnants of the broken bottle and gave some testimony, although he was quite limited in his answers. He stated that the bottle was charged with carbonic acid gas; that where water taken from the faucet, as it was in the present case, is charged with carbonic acid gas at fifty pounds and subjected to an increased temperature, the liquor would expand, reducing the space above it; that the gas would be heated and expanded with an accompanying increased pressure, and that the liquid would hold more carbonic acid at lower temperatures than at higher temperatures. The witness stated that the change of temperature of a second's

duration would affect the contents of the bottle. The record is no more informative than I have stated, and it may be regarded that evidence was not offered that would completely deal with the subject. But I take the record as it is. The defendant seems to have been engaged in rather delicate business, if the fact be as he states concerning the exploding limit of the bottle and the customary explosions that resulted from charging them. The jury could infer that, either through his lack of skill, or rashness, he was subjecting his customers to the use of bottles charged at or near the exploding point, and that common prudence required a safety margin that is not shown by the present evidence to exist.

The judgment dismissing the complaint should be reversed and a new trial granted, costs to abide the event.

JENKS, P. J., STAPLETON, RICH and BLACKMAR, JJ., concurred.

Judgment dismissing complaint reversed and new trial granted, costs to abide the event.